TOWNSEND et al. v. HAGAR.

(Circuit Court of Appeals, Second Circuit. March 3, 1896.)

1. PARTNERSHIP—LIABILITY OF PARTNERS—NOTICE.

When negotiable securities, transferable by delivery, are intrusted by the owner to one partner of a firm, to be used in raising money for the owner's benefit, and are by such firm afterwards used in raising money for its benefit,—the proceeds of the loans so secured and sales made being credited to the partner to whom the securities were intrusted,— the other partners are affected with his knowledge of the real owner's interest, and all are equally liable to the owner for the moneys raised by means of the securities and used by the firm.

2. PLEADING—NEW YORK CODE—DISREGARDING IRREGULARITIES.

Under the provision of the New York Code of Civil Procedure (section 1207), that when there is an answer the court may permit the plaintiff to take any judgment consistent with the case made by the complaint and embraced within the issue, a judgment will not be reversed because the complaint is inartificially drawn, or sets out a cause of action as for conversion, which should properly be for money received to the plaintiff's use, if the vital issue of the case is preferred in the complaint and controverted in the answer, and the defendant has had full opportunity to adduce any evidence available in defense.

In Error to the Circuit Court of the United States for the Eastern District of New York.

This case comes here upon a writ of error to the circuit court, Eastern district of New York, to review a judgment entered April 9, 1895, upon a verdict in favor of the defendant in error, who was plaintiff below. A motion for new trial was denied. 67 Fed. 433. The judgment is for $1,145.63 and costs against both plaintiffs in error, and for the additional sum of $1,653.22 and costs against the plaintiff in error Townsend. The facts are stated in the opinion.

Peter S. Carter, for plaintiffs in error.

T. M. Taft, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. On and prior to December 8, 1887, the defendant Townsend and one George Edgett were co-partners in business in the city of New York under the firm name of Townsend

& Edgett. This partnership continued until May 1, 1891, on which day the defendant Downey became a partner with the other two, the firm name remaining unchanged. On November 30, 1891, Edgett retired, and thereafter the firm continued under the name of Townsend & Downey. This action was brought against the defendants now surviving and Edgett, who died before the cause came on for trial. The action was not revived against his personal representatives.

On December 8, 1887, the plaintiff, Hagar, was the owner of seven first mortgage bonds of the Mexican Central Railroad, in the amount of $1,000 each. They were in the ordinary form of such negotiable securities, not registered, and payable to bearer. He delivered these to Edgett upon an agreement whereby Edgett was to pledge them as security for a loan of $3,500, remitting the proceeds to Hagar, or using the same to pay indebtedness for which Hagar was responsible. It appears conclusively that Edgett accounted to Hagar for $1,367 of the $3,000 which he raised on the bonds. Whether he ever accounted to him for the remaining $1,633 is not clear, upon the proofs; but, in view of the way in which the case was disposed of at circuit, it is immaterial whether he did or not. The judge held that defendants were not responsible for the $3,000 originally borrowed on pledge of the bonds, and the plaintiff has not assigned any error. The equity in the bonds over and above the $3,000 for which, with his assent, they were pledged, remained the property of Hagar. The $3,000 was loaned December 14, 1887, by the German-American Bank, on a note of Townsend & Edgett, with these seven bonds as collateral security. This $3,000 was placed to the credit of the firm on the books of the bank, and subsequently paid out on their checks. On the books of the firm, Edgett was given credit for $3,000 advanced to the firm, and subsequently drew out that sum from the concern. The bonds remained pledged with the bank as security for this $3,000 note until November 20, 1891, when a new note of the same firm, in the amount of $4,000, was given, and the same bonds pledged as collateral therefor. The bank retained $3,000 to pay the old note, and the additional $1,000 was passed to the credit of the firm upon the books of the bank, and was subsequently drawn out on checks of the firm. On the firm books, Edgett was credited with $1,000. On February 31, 1892, the new firm (Townsend & Downey) paid off this note of $4,000, and obtained a renewal loan for the same amount on their firm note, pledging the bonds as security therefor. Subsequently the bank pressed for payment of this last note, whereupon the defendants directed the bank to sell the bonds and pay itself out of the proceeds. The bonds were then sold for $5,526.85, out of which the bank paid the $4,000 note and interest, crediting the firm of Townsend & Downey with the balance, $1,460.88, which was subsequently drawn out on the checks of the firm. On the firm books, $1,460.88 was credited to Edgett; and it appears that whatever credits he had with the firm were, in due course, paid over to him.

It is apparent from this narrative of the transactions that, so far as the firm was concerned, these bonds were treated in all respects

as if they were the individual property of the partner Edgett, loaned by him to serve as security for firm paper, and everything realized from such bonds by the firm was credited to him as an advance of money, and in due course repaid to him.　Practically, the situation is the same as if the firm had bought the bonds from the partner Edgett.　Inasmuch as the bonds were negotiable securities, payable to bearer, the legal title to which passed by delivery, this would give them a good title, and cut off any equities, provided they acted without notice of Hagar's rights.　The difficulty, however, with the contention of plaintiffs in error, is that not only did one of the partners, Edgett, concededly have full knowledge of the facts, but the jury, by a special verdict, in answer to a separate question submitted to them, have found, upon conflicting evidence, that the other partner, Townsend, knew before the $1,000 (additional) was advanced by the bank, November 20, 1891, that the bonds belonged to Hagar.　With this knowledge the third partner, Downey, is affected.　Daniel, Neg. Inst. § 802; Railroad Co. v. Mowry, 28 Hun, 79.　The judge who tried the cause in the circuit court instructed the jury that Downey could be held responsible only for the final balance turned over by the bank, $1,460.88, and not for the $1,000 advanced to the firm when the note was first increased from $3,000 to $4,000, evidently under the supposition that Downey was not then a member of the firm.　This is manifest from the language of the opinion filed on the denial of motion for a new trial.　In this assumption, however, the learned judge was in error, since the evidence shows that Downey became a member of the firm of Townsend & Edgett in May, 1891, and that the additional $1,000 was raised on the bonds, and passed to the credit of that firm, six months later,—November 20, 1891.　The plaintiff was entitled to the same judgment against both defendants, but, since he has not assigned error, the judgment entered against Downey should not be disturbed.

The defendants further contend that plaintiff was not entitled to judgment for the $1,000 and the $1,460.88, under his complaint. That pleading is unnecessarily voluminous.　It sets forth all the facts substantially as above recited, except that it does not aver what sum the bonds brought when sold by the bank, nor the precise amount of proceeds of the sale, over and above repayment of the note, which came into the possession of, and were used by, defendants.　These averments are repeated in two separate alleged causes of action, in the last of which it is averred that, by the actions of defendants in procuring the bank to sell the bonds, said bonds became wholly lost to plaintiff, and the proceeds were applied to the use of the defendants.　The prayer for relief asks judgment for a return of the bonds, or for damages suffered by plaintiff from the loss thereof.　This complaint is inartificially drawn.　It fails to aver that the proceeds of the bonds were received by defendants to the use of plaintiff, and is, in form, one for conversion, rather than for money had and received.　But the Code of Civil Procedure of the state of New York (section 1207) provides that, "when there is an answer, the court may permit the plaintiff to take any judgment consistent with the case made by the complaint and embraced within the issue."　And

the power given to the court to amend a pleading, even after judgment, is most liberal. Section 727. Every issue of fact essential to make out a cause of action for money rightfully the property of plaintiff, received by defendants to his use, was tendered in the complaint, except that the precise amount thus received was not set forth,—probably because it was not within plaintiff's knowledge,— an amount greater than the true amount being averred. The facts proved—indeed, the undisputed facts, since the knowledge of Edgett was the knowledge of his partners, irrespective of the jury's finding as to Townsend's knowledge—show that the plaintiff was entitled to recover the $2,480.88 which the defendants had received by selling his bonds without his consent. Under these circumstances, it would be a failure of justice to send the case back for a new trial, by reason of technical defects in the complaint, when defendants have had full opportunity to adduce, and have adduced, on the trial, whatever evidence was available to them as a defense against such cause of action. The vital issue of fact, namely, the transfer of the bonds from Hagar to Edgett upon an express agreement that they should be used only for a special purpose, and then returned to plaintiff, was proffered in the complaint, and controverted by the answer. It must be assumed that on that issue defendants produced all the proof they had. Certainly, if they did not it was not because they were misled, either by the complaint or by any action of the trial judge. Every other fact necessary to recovery—the existence of the partnership; the dates when Downey came into it, and when Edgett left; the time of, and circumstances attending, the raising of the additional $1,000; the fact that it was passed to the firm's credit, and drawn out of the bank on its checks; the instructions to the bank to sell the bonds; the amount of the surplus realized on such sale; the passing of that surplus to the credit of the firm, and the drawing of it out by firm checks—all appeared by the uncontradicted evidence of one of the defendants himself. As we find no error in the admission of evidence, or in the instructions to the jury, the judgment of the circuit court is therefore affirmed.